UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET |
| VERSUS | NO: 06-056 |
| DAMENION SIMS | SECTION: T (4) |

## ORDER AND REASONS

Before the Court is Defendant Damenion Sims' Motion for Early Termination of Supervised Release (the "Motion"), requesting early termination of his ten-year term of supervised release.[1] The Government opposes early termination but does not object to a reduction of Sims' supervised release term from ten to five years.[2] For the following reasons, the Court will DENY the Motion, but will GRANT Mr. Sims a modification of his term of supervised release from ten years to five years.

## BACKGROUND

In 2006, law enforcement officers stopped Mr. Sims in his vehicle near Hammond, Louisiana.[3] The officers discovered roughly 450 grams of crack-cocaine in Mr. Sims' vehicle and other drug-trafficking paraphernalia in his residence.[4] Pursuant to a plea agreement, Mr. Sims pleaded guilty to possession with intent to distribute at least fifty grams of crack-cocaine in violation of 21 U.S.C. § 841(b)(1).[5] The Court sentenced Mr. Sims to the then-applicable

---

[1] R. Doc. 88.
[2] R. Doc. 92.
[3] *Id.* at 1.
[4] *Id.*
[5] R. Doc. 92 at 1; R. Doc 88 at 2.

1

mandatory minimums of 240 months incarceration and ten years of supervised release.[6] In 2017, President Barack Obama commuted Mr. Sims' prison sentence.[7] This commutation did not affect the term of supervised release, which began upon Mr. Sims' release from prison on January 18, 2019.[8]

On August 15, 2022, roughly three and a half years into his supervised release term, Defendant filed the instant Motion, asking the Court to consider granting early termination of his supervised release.[9] In response, the Government filed a Memorandum in Opposition to Defendant's Motion, arguing that the Court should deny the Motion based on the nature of Mr. Sims' offense and his criminal history.[10] However, the Government also stated that it "does not oppose a modification and reduction of Sims's term of supervision considering his apparent compliance and the significant changes to the legal landscape involving the statute for which Sims was convicted."[11]

## APPLICABLE LAW

### I. Early Termination of Supervised Release

The Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]"[12] In making ithis determination, the Court must consider many of the same factors assessed when imposing the original sentence, "including the nature of the offense and the history of the offender,

---

[6] R. Doc. 92 at 2; R. Doc 88 at 2.
[7] R. Doc. 92 at 2; R. Doc. 88 at 1.
[8] R. Doc. 92 at 2.
[9] R. Doc. 88 at 2.
[10] R. Doc. 92 at 1.
[11] *Id.*
[12] 18 U.S.C. § 3583(e)(1).

2

as well as any implications for public safety and deterrence."[13]

"[E]arly termination is discretionary and is warranted only in cases where the defendant shows changed circumstances, such as exceptionally good behavior."[14] "Courts have generally held that something more than compliance with the terms of probation is required to justify early termination[.]"[15] "Full compliance, after all, is merely what is expected of all people serving terms of supervised release."[16] In determining what is considered exceptional, the Court has broad discretion under the statute.[17]

Additionally, the Court should consider the goals of supervised release, which "aims to rehabilitate defendants and reduce recidivism by easing the transition from prison to the community. These benefits are only realized if defendants are subject to supervision."[18] As such, "[s]hortening the period of supervised release reduces the amount of time a former prisoner is monitored by the system and undermines the rehabilitative goals Congress pursued in enacting [18 U.S.C.] § 3624."[19]

## II.    **Modification and Reduction of Supervised Release**

The Court has discretion to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"[20] When considering a modification, the Court "should evaluate whether the

---

[13] *United States v. Jeanes*, 150 F.3d 483, 484 (5th Cir. 1998); *see also* 18 U.S.C. § 3583(e).
[14] *United States v. Jones*, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013) (collecting cases).
[15] *United States v. Smith*, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014) (collecting cases); *see also United States v. Jones*, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013) (collecting cases).
[16] *Karacsonyi v. United States*, 152 F.3d 918, 1998 WL 401273, at *2 (2d Cir. June 10, 1998) (unpublished).
[17] *See Jeanes*, 150 F.3d at 484.
[18] *United States v. Cartagena-Lopez*, 979 F.3d 356, 363 (5th Cir. 2020).
[19] *United States v. Jackson*, 426 F.3d 301, 305 (5th Cir. 2005).
[20] 18 U.S.C. § 3583(e)(2).

conditions of supervised release 'involve[] no greater deprivation of liberty than is reasonably necessary for the purposes' of deterrence, public protection, and rehabilitation."[21] The Court may also consider changes in the law as part of its analysis under 18 U.S.C. § 3553(a).[22]

### III. Changes in Law Since Mr. Sims' Conviction

Section 2(a) of the Fair Sentencing Act of 2010 modified the statutory penalties for crack-cocaine offenses under 21 U.S.C. § 841(b)(1) by increasing the quantity of crack needed to trigger mandatory minimum sentences.[23] Namely, the necessary quantity to trigger a mandatory 10-year minimum sentence increased from 50 grams to 280 grams, and the necessary quantity to trigger a mandatory 5-year minimum sentence increased from 5 grams to 28 grams.[24] Under the current version of 21 U.S.C. § 841(b)(1), a defendant charged, as was Mr. Sims, with possess with intent to distribute at least 280 grams of crack would be subject to a minimum of only 120 months in prison and five years of supervised release.[25]

The passage of the First Step Act of 2018 made the Fair Sentencing Act's modifications retroactive.[26] Under Section 404 of the First Step Act, if a defendant was sentenced for a "covered offense"—statutory offenses modified by the Fair Sentencing Act, such as the instant crack-cocaine offense under 21 U.S.C. § 841(b)(1)—the district court has the authority to impose a reduced sentence as if the modified penalties were in effect at the time of the defendant's sentencing.[27]

---

[21] *United States v. Insaulgarat*, 289 F. App'x 738, 740 (5th Cir. 2008) (quoting 18 U.S.C. § 3583(d)(2)).
[22] *See Concepcion v. United States*, 142 S. Ct. 2389, 2404–05 (2022) (in context of the First Step Act, district courts should consider arguments regarding intervening changes of law or fact in exercising discretion to reduce sentence).
[23] Pub. L. No. 111-220, §2(a), 124 Stat. 2372, 3272 (2010).
[24] *Id.*
[25] *See* 21 U.S.C. § 841(b)(1) (2022).
[26] *See United States v. Winters*, 986 F.3d 942, 945 (5th Cir. 2021); Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).
[27] *Id.*

## ANALYSIS

While the Government notes no noncompliance on the part of Mr. Sims with the terms of his supervised release, other factors the Court must consider weigh against early termination.[28] First is the nature of the offense, which involved possession with intent to distribute 450 grams of crack-cocaine.[29] Second, Mr. Sims' criminal history "consists of 21 criminal history points—8 more than needed to trigger the maximum category VI guidelines classification," and he has demonstrated difficulty complying with terms of supervision and avoiding criminal activity during previous terms of parole or probation. *Id.* Third, Mr. Sims has served less than half of his ten-year term of supervised release.[30] Because most relevant factors weigh against early termination of supervised release, Mr. Sims' Motion is DENIED.

However, the Government does not oppose modification of Mr. Sims' term of supervision and correctly notes "the legal landscape surrounding Sims's statute of conviction has changed significantly since his conviction."[31] Because Mr. Sims was convicted of a "covered offense[,]" Section 404 of the First Step Act permits the Court to modify Mr. Sims' sentence, should it see fit to do so, as if the Fair Sentencing Act had been in effect at the time of his sentencing. Under that Act's reduced statutory penalties, Mr. Sims would have been subject to a mandatory minimum of 120 months in prison and eight years (rather than ten years) of supervised release. Furthermore, if Mr. Sims were sentenced for the same offense today, he would be subject to a minimum term of only five years of supervised release.

---

[28] R. Doc. 92 at 3-4.
[29] *Id.* at 4.
[30] *Id.* at 4-5.
[31] *Id.* at 5.

Considering these changes in the law, as well as Mr. Sims' compliance with the terms of his supervised release, this Court has determined that a reduction in Mr. Sims' supervised release term would remain in accordance with Congress' goal "to rehabilitate defendants and reduce recidivism by easing the transition from prison to the community."[32] For the reasons stated above, Mr. Sims' term of supervised release shall be reduced from ten years to five years, resulting in an end date of January 18, 2024.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Damenion Sims' Motion for Early Termination of Supervised Release, R. Doc. 88, is **DENIED**.

However, **IT IS FURTHER ORDERED** that Mr. Sims' sentence is hereby **MODIFIED** to the extent that his term of supervised release shall now be five years rather than ten years. All other terms of Mr. Sims' sentence and supervised release remain in effect as originally ordered by this Court.

New Orleans, Louisiana, this 25th day of September, 2023.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[32] *See Cartagena-Lopez*, 979 F.3d at 363.